# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR DOMINIC CARDENAS,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:14-cv-00603-SAB<br><br>ORDER PARTIALLY GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDINGS |

Plaintiff Cesar Dominic Cardenas ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 8, 9.)

Plaintiff applied for Social Security benefits due to impairments arising from a heart attack. For the reasons set forth below, Plaintiff's appeal from the final decision of the Commissioner is partially granted and this action is remanded to the Commissioner for further administrative proceedings.

/ / /

/ / /

/ / /

1

# I.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff applied for Supplemental Security Income benefits on February 28, 2011. (AR 138.) Plaintiff's application was denied on May 9, 2011. (AR 81.) Plaintiff requested reconsideration of the denial on or around June 24, 2011. (AR 78.) Plaintiff's request for reconsideration was denied on October 19, 2011. (AR 88.) Plaintiff requested a hearing on or around December 15, 2011. (AR 93.)

On October 9, 2012, a hearing took place before Administrative Law Judge Sharon L. Madsen ("the ALJ"). (AR 32-58.) On January 4, 2013, the ALJ issued a written decision finding Plaintiff to be not disabled. (AR 14-26.) Plaintiff requested a review of the ALJ's decision on or around February 4, 2013. (AR 11.) The Appeals Council denied Plaintiff's request for review on December 19, 2013. (AR 4-6.)

### A. Plaintiff's Hearing Testimony[1]

Plaintiff was born on December 16, 1974. (AR 36.) Plaintiff is 5'10" and weighs 290 pounds. (AR 36.) Plaintiff is married with four children, ranging from 15 months old to 15 years old. (AR 36.) Plaintiff's wife is on disability. (AR 36.) Plaintiff can drive a car. (AR 36.) Plaintiff graduated from high school and attended a couple of years of general education schooling and vocational training for truck driving. (AR 37.)

Plaintiff does not need help with personal care. (AR 37.) Plaintiff does "very little" household chores. (AR 37.) Plaintiff does not cook and goes shopping "very seldom[ly]." (AR 37.) Plaintiff visits family who lives close by. (AR 37-38.) Plaintiff used to fish, but not so much lately. (AR 38.) Plaintiff used to play softball. (AR 38.)

On a typical day, Plaintiff will help the kids get ready and do "little stuff around the house." (AR 38.) Plaintiff usually ends up going to his sister's house, which is a block away. (AR 38.) Plaintiff watches "[v]ery little TV" and he listens to music. (AR 38.) Plaintiff usually takes naps around 2:00 p.m. on Sundays. (AR 38.)

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 11.)

1  Plaintiff worked in trailer manufacturing and repair in 1997 and 1998. (AR 38.)
2 Plaintiff's job involved welding. (AR 38.) Plaintiff worked for Butler Manufacturing welding
3 buildings. (AR 39.) Plaintiff would have to lift 50 to 120 pounds. (AR 39-40.) In 2010,
4 Plaintiff worked as a truck driver. (AR 40.) Plaintiff drove for 90 percent of the time and would
5 load or unload trucks once in a while. (AR 40.)

6  Plaintiff sees a cardiologist every three to four months. (AR 41.) Plaintiff receives
7 adjustments to his pacemaker every three months. (AR 41.) Plaintiff described his memory and
8 fatigue as the two biggest medical issues. (AR 41.) Plaintiff takes Carvedilol for his heart and
9 Glipizide and Metformin for his diabetes. (AR 43.) Plaintiff takes Lisinopril for his blood
10 pressure. (AR 43.) Plaintiff also takes aspirin. (AR 43.) Plaintiff described trouble with his
11 memory, such as forgetting conversations within an hour or two and repeating things in
12 conversation. (AR 44.)

13  Plaintiff estimated that he could lift 20 to 40 pounds. (AR 44.) Plaintiff can stand for
14 about two hours. (AR 44-45.) Plaintiff does "some" walking, going down the block from one
15 house to another. (AR 45.) Plaintiff stated that he is "very limited" in climbing stairs. (AR 45.)
16 Plaintiff estimated that he could sit for thirty minutes to an hour before he would have to get up
17 and do something else. (AR 48.) Plaintiff estimated that he would have to take 20-30 minute
18 breaks before getting back on task. (AR 49.)

19  Plaintiff suffered a heart attack in 2010. (AR 45-46.) Plaintiff stated that the deprivation
20 of oxygen to his brain during the episode caused memory and cognition problems. (AR 46.)
21 Plaintiff stated that if he were told to perform three tasks at work, he would forget the second and
22 third tasks by the time he was done performing the first. (AR 46.) Plaintiff has trouble
23 performing detailed work due to his memory. (AR 47.) Plaintiff relies on his children to
24 remember to take his medication. (AR 47.)

25  **B.  VE Testimony**

26  Thomas Dachelet testified as the vocational expert ("the VE") at the hearing before the
27 ALJ. (AR 53.) The VE classified Plaintiff's past work as "trucking" (medium, SVP 4, semi-
28 skilled). (AR 54.) The VE noted that the unloading and loading done by Plaintiff was medium

3

1 to heavy work. (AR 54.) Plaintiff also worked as a "welder, combination welder" (medium SVP
2 6, skilled). (AR 54.) The VE noted that this work was very heavy as performed. (AR 54.) The
3 VE also indicated that there was some transferability of skills. (AR 54.)

4     The ALJ presented the VE with the following first set of hypothetical limitations:
5 - Same age, education, and work background as Plaintiff;
6 - Can lift and carry 20 pounds occasionally, 10 pounds frequently; and
7 - Can sit four hours and stand or walk four hours.

8 (AR 54.) The VE testified that a person with such limitations could not perform Plaintiff's past
9 work, but could perform other work, approximately one-third of all the jobs performed at the
10 light level. (AR 54-55.) The VE specifically identified jobs such as "packing line worker,"
11 "garment sorter," and "ampule filler." (AR 55.)

12     The ALJ presented the VE with the following second set of hypothetical limitations:
13 - Same age, education, and work background as Plaintiff;
14 - Can lift and carry 20 pounds occasionally, 10 pounds frequently;
15 - Can sit for six hours and stand or walk for two hours;
16 - Can only occasionally stoop, crouch, crawl, climb, and kneel;
17 - Can frequently balance; and
18 - Must avoid working at heights or around dangerous machinery.

19 (AR 55.) The VE testified that a person with such limitations could perform the full range of
20 sedentary, unskilled jobs. (AR 55.) The VE specifically identified jobs such as "leaf tier,"
21 "ampule sealer," and "weight tester." (AR 55.)

22     The ALJ presented the VE with a third set of hypothetical limitations, which was
23 identical to the second set but with the additional limitation of only being able to perform simple,
24 routine tasks. (AR 56.) The VE testified that the additional limitation would not cause any
25 change. (AR 56.)

26     The ALJ presented the VE with a fourth set of hypothetical limitations, which was
27 identical to the third set but with the additional limitation that the person requires additional
28 supervision and two to four breaks of 30 minutes per day. (AR 56.) The VE testified that such a

person could not perform any jobs.  (AR 56.)

Plaintiff's attorney presented the VE with a fifth set of hypothetical limitations:

- Same age, education, and work background as Plaintiff;
- Must take a 45 to 60 minute nap and a 20 minute nape for to five days a week;
- Has difficulty with memory;
- Cannot remember simple instructions for more than an hour or so;
- Can sit for up to one hour before requiring a 20-30 minute break; and
- Has difficulty maintaining a regular schedule.

(AR 56-57.)  The VE testified that a person with such hypothetical limitations could not perform any jobs.  (AR 57.)

### C. Medical Records

The administrative record includes medical records from St. Agnes Medical Center (AR 239-264, 317-327, 408-1004), records from Orosi Urgent Care (AR 265-275, 1005-1048), an April 28, 2011 Residual Functional Capacity Assessment from Dr. S. Clancey, M.D. (AR 276-280), a May 2, 2011 Case Analysis from Karin P. Gillin (AR 281-282), records from Hematology Oncology Medical Group (AR 283-316, 364-399), a September 1, 2011 Psychological Consultative Examination Report from Dr. Richard Engeln, Ph.D (AR 328-337), a September 27, 2011 Case Analysis from Dr. A. Lizarraras, M.D. (AR 343-345), an October 18, 2011 Psychiatric Review Technique Form from Dr. J.D. Schwartz (AR 346-359), an October 18, 2011 Residual Functional Capacity Assessment from Dr. J.D. Schwartz (AR 360-363), an October 3, 2012 medical opinion from Dr. Tejwant S. Shillon, M.D. (AR 400-401), an October 3, 2012 Cardiac Medical Source Statement from Dr. Tejwant S. Dhillon, M.D. (AR 402-407), and records from Community Regional Medical Center (AR 1049-1074).  The medical records will be discussed in more detail below as pertinent to the Court's analysis.

### D. The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2015;

- Plaintiff has not engaged in substantial gainful activity since October 1, 2010, the alleged onset date;
- Plaintiff has the following severe impairments: nonischemic cardiomyopathy, left bundle branch block, status post pacemaker/defibrillator implantation, and obesity;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours in an 8-hour workday, and sit 4 hours in an 8-hour workday;
- Plaintiff is unable to perform any past relevant work;
- Plaintiff was born on December 16, 1974 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date;
- Plaintiff has at least a high school education and is able to communicate in English;
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled" whether or not Plaintiff has transferable job skills;
- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; and
- Plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2010, through the date of the ALJ's decision.

(AR 19-26.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the

Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

### A. The ALJ Did Not Err In Determining That Plaintiff's Borderline Intellectual Functioning Was Not A "Severe Impairment"

Plaintiff argues that the ALJ erred at Step Two of the sequential analysis by failing to determine that Plaintiff's borderline intellectual functioning was a "severe impairment." Plaintiff contends that the ALJ erred by failing to follow the Social Security Regulation's "Psychiatric Review Technique" ("PRT") process in assessing Plaintiff's borderline intellectual functioning.

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments." Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). In evaluating mental impairments, the ALJ is required to follow a special PRT process described in 20 C.F.R. § 404.1520a. This process requires the ALJ to 1) determine whether Plaintiff has a medically determinable mental impairment, 2) rate the degree of functional limitation for four functional areas, 3) determine the severity of the mental impairment, and 4) if the impairment is severe, proceed to Step Three of

the sequential analysis and determine if the impairment meets or equals a specific listed mental disorder. 20 C.F.R. § 404.1520a(b)-(d).

The Social Security Regulations expressly require that the application of the PRT be documented by the ALJ. 20 C.F.R. § 404.1520a(e); see also Keyser, 648 F.3d at 725. "Specifically, 'the written decision *must* incorporate the pertinent findings and conclusions based on the technique' and '*must* include a specific finding as to the degree of limitation in each of the functional areas.'" Keyser, 648 F.3d at 725 (quoting 20 C.F.R. § 404.1520a(e)(4)). "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist ... of conclusions' found in a PRTF [Psychiatric Review Technique Form]." Id. "[T]he Social Security Regulations require an ALJ to complete a PRTF and append it to the decision, or to incorporate its mode of analysis into the ALJ's findings and conclusions." Id. at 726.

In this case, the ALJ did not document the application of the PRT at Step Two or Step Three of the sequential analysis. The ALJ did not mention Plaintiff's borderline intellectual functioning at Step Two or Step Three.

The record does include a Psychiatric Review Technique Form ("PRTF") authored by Dr. J.D. Schwartz. (AR 346-359.) This PRTF was expressly mentioned and discussed by the ALJ in the written opinion, albeit at Step Five of the Sequential Analysis and not at Step Two. (AR 23.)

The Court finds that any error committed by the ALJ in failing to append a completed PRTF to the written decision or incorporate its mode of analysis was harmless. While the ALJ failed to mention Plaintiff's borderline intellectual functioning at Step Two and Step Three of the analysis, the ALJ did conduct an in-depth analysis of Plaintiff's intellectual functioning at Step Five. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). Since Plaintiff "passed" the "de minimis screening device" at Step Two, any error by the ALJ in failing to include Plaintiff's borderline intellectual functioning as a "severe impairment" at Step Two was harmless. The ALJ considered Plaintiff's intellectual functioning in his determination of Plaintiff's residual functional capacity at Step Five. Adding "borderline

intellectual functioning" as an additional severe impairment at Step Two would have had no effect on the ultimate question of disability in this action in light of the ALJ's consideration of Plaintiff's intellectual functioning at Step Five.  See Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1054-55 (9th Cir. 2006) (harmless error where mistake was non-prejudicial to the claimant or irrelevant to the disability conclusion); Crawford v. Colvin, No. 2:13-cv-2278-EFB, 2015 WL 1393231, at *3 (E.D. Cal. Mar. 25, 2015) (any error at step Two harmless when the impairments were considered in assessing plaintiff's RFC).

Furthermore, the ALJ sufficiently incorporated the PRT mode of analysis in her findings and conclusions, albeit the analysis was done at Step Five rather than at Step Two and Three.  At the Step Five stage, the ALJ considered Plaintiff's borderline intellectual functioning.  The ALJ discussed the degree of functional limitation in the four functional areas in assessing Dr. Schwartz's PRTF with Dr. Engeln's Psychological Evaluation.  The ALJ determined the severity of the mental impairment by adopting Dr. Engeln's opinion and finding that Plaintiff suffered no limitations in any functional area.  The ALJ thereby concluded Plaintiff's borderline intellectual functioning was a non-severe impairment.  Accordingly, the ALJ applied the correct technique required under 20 C.F.R. § 404.1520a.  The fact that the ALJ's analysis took place at Step Five rather than Step Two is not grounds for reversal.  The Court finds no error in the ALJ's analysis.

**B.     The ALJ Did Not Err In The Assessment Of Plaintiff's Mental Limitations**

Plaintiff argues that the ALJ erred by failing to incorporate Plaintiff's limitations associated with his borderline intellectual functioning in Plaintiff's residual functional capacity.  Plaintiff argues that the ALJ erred in rejecting the medical opinion of Dr. Schwartz.

In assessing Plaintiff's residual functional capacity, the ALJ considered opinions regarding Plaintiff's mental limitations from Dr. Richard Engeln, Ph.D and Dr. J.D. Schwartz. (AR 22-23.)   The ALJ also considered Plaintiff's subjective reports regarding his own limitations.

1.     Legal Standards for Evaluating Medical Opinions

"Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("...generally a treating physician's opinion carries the most weight of the various types of physician testimony.") "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984))

"The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "[T]he Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Id. (citing Pitzer, 908 F.2d at 506). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

2.   Medical Opinions Regarding Plaintiff's Mental Limitations

Dr. Engeln authored a Psychological Evaluation dated September 1, 2011.  (AR 328-337.) Dr. Engeln indicated that his evaluation of Plaintiff included an individual interview and administration of the following psychological tests: the Wechsler Adult Intelligence Scale 4th Edition, the Wechsler Memory Scale IV, the Bender-Gestalt Test II, the Mental Status Exam, and the Diagnostic History. (AR 328.) Dr. Engeln described Plaintiff's test results in Verbal Comprehension as "low average," in Perceptual Reasoning as "high borderline," in Working Memory as "high borderline," in Processing Speed "low average," and in Full Scale IQ "borderline." (AR 331.) Plaintiff's scores in memory tests were borderline and low average. (AR 331.) Dr. Engeln wrote that "[o]n the present interview Mr. Cardenas presented with no evidence of any mental or emotional illness" and "[v]erbally, cognitively, and socially Mr.

1 Cardenas is capable of job adjustment, consonant with his education and work history." (AR
2 332.)   Dr. Engeln further wrote that Plaintiff "is able to receive instructions that are
3 multidimensional and deal with the normal social exchanges of job adjustment.  Restrictions to
4 job adjustment would be medical-physical in nature." (AR 332.) Dr. Engeln wrote that Plaintiff
5 had "[n]o restrictions" in all categories. (AR 332-333.)

6        Dr. Schwartz authored a Psychiatric Review Technique and Residual Functional Capacity
7 Assessment dated October 18, 2011.  (AR 346-362.)  Dr. Schwartz wrote that Plaintiff suffers
8 from "Mild" restriction of activities of daily living and "mild" difficulties in maintaining social
9 functioning. (AR 356.) Dr. Schwartz indicated that Plaintiff suffers from "moderate" difficulties
10 in maintaining concentration, persistence, or pace.  (AR 356.)  Dr. Schwartz wrote that he
11 disagreed with Dr. Engeln's report:

> MSS [Medical Source Statement] indicates no restrictions.
> However, given borderline test scores claimant would be limited to
> simple tasks.

14 (AR 358.)  Dr. Schwartz indicated that Plaintiff was "moderately limited" in the ability to
15 understand and remember detailed instructions, the ability to carry out detailed instructions, and
16 the ability to maintain attention and concentration for extended periods. (AR 360.) Nonetheless,
17 Dr. Schwartz wrote that Plaintiff is "capable of understanding and remembering simple
18 instructions," and "is capable of carrying out simple instructions and able to maintain
19 concentration and attention over extended periods for simple tasks." (AR 362.)

20        3.   The ALJ's Assessment of Plaintiff's Mental Limitations

21        The ALJ adopted Dr. Engeln's opinion regarding Plaintiff's mental limitations and
22 rejected Dr. Schwartz's opinion.  The ALJ noted that Dr. Schwartz's opinion is not considered to
23 be an opinion from an examining source. (AR 23.) The ALJ further noted that Dr. Engeln's
24 opinion is considered to be an opinion from an examining source. (AR 24.) Accordingly, by
25 default, Dr. Engeln's opinion is entitled to greater weight.

26        Furthermore, the ALJ gave more weight to Dr. Engeln's opinion than Dr. Schwartz's
27 opinion because Dr. Schwartz's opinion was not entirely consistent with the record as a whole.
28 (AR 23.) The ALJ noted Plaintiff's ability to drive a car for two hours or more at a time.  (AR

23.) The ALJ further noted that Dr. Engeln's opinions were more consistent with the record as a whole, including Plaintiff's daily activities of providing child care, driving, and automobile maintenance. (AR 24.) The ALJ also noted that Dr. Schwartz's opinion regarding Plaintiff's limitations associated with carrying out simple instructions presented a "moot question" because the VE testified that a hypothetical individual could still work with that additional limitation. (AR 23-24.)

The ALJ further noted that Plaintiff's subjective testimony was not fully credible because he and his sister gave inconsistent statements regarding Plaintiff's limitations. (AR 23.) The ALJ noted that Plaintiff denied being able to fish due to his impairments, while his sister reported that Plaintiff fishes for several hours at a time. (AR 23.)

   4. <u>Discussion</u>

Plaintiff raises several arguments pertaining to the ALJ's assessment of Plaintiff's mental limitations. First, Plaintiff argues that the ALJ's failure to assign any mental limitations in Plaintiff's residual functional capacity arising from Plaintiff's borderline intellectual functioning was "deficient as a matter of law because it failed to take into account symptoms and limitations which reasonably resulted from these well documented mental conditions." Plaintiff further argues that the ALJ failed to "assess the severity" of Plaintiff's borderline intellectual functioning. This argument is factually inaccurate. The ALJ considered Plaintiff's borderline intellectual functioning in assessing the medical opinions offered by Dr. Engeln and Dr. Schwartz. The ALJ chose to adopt the opinion of Dr. Engeln, who acknowledged Plaintiff's borderline intellectual functioning but concluded that Plaintiff's borderline intellectual functioning would present "no restriction" in all categories considered in the residual functional capacity assessment. Plaintiff appears to suggest that any claimant with borderline intellectual functioning must, as a matter of law, also possess restrictions reflected in the residual functional capacity related to the borderline intellectual functioning. Plaintiff cites no authority for this proposition. Dr. Engeln's report serves as evidence that, in Dr. Engeln's opinion, Plaintiff's borderline intellectual functioning does not substantially affect Plaintiff's ability to work.

/ / /

Plaintiff argues that the ALJ erred in giving less weight to Dr. Schwartz's opinion. The Court rejects Plaintiff's arguments. As an initial matter, Dr. Engeln was an examining physician and Dr. Schwartz was a non-examining physician. Therefore, by default, Dr. Engeln's opinion is entitled to more weight.

Furthermore, the ALJ provided additional, valid, reasons to reject Dr. Schwartz's opinion. Plaintiff argues that the ALJ erred in rejecting Dr. Schwartz's opinion that Plaintiff suffered moderate deficiencies in concentration, persistence, and/or pace by citing Plaintiff's activities of daily living. Specifically, the ALJ noted that Dr. Schwartz's finding was inconsistent with the fact that Plaintiff could drive for two hours or more at a time. Plaintiff argues that an activity of daily living cannot serve as the basis of rejecting a limitation in the category of concentration, persistence, or pace because there exists a separate category for "restrictions of activities of daily living. In other words, it appears that Plaintiff's argument is that, since the residual functional capacity assessment form uses two separate categories for "activities of daily living" and for "maintaining concentration, persistence, or pace," the evidence relevant to each category must somehow be mutually exclusive, i.e., evidence relevant to activities of daily living cannot be relevant to maintaining concentration, persistence, or pace, and vice versa. This argument makes no logical sense and Plaintiff cites no authority for this proposition. The fact that Plaintiff can drive and can drive for extended periods of time serves as evidence relevant to both categories as it is both an activity of daily living as well as an activity that requires concentration, persistence, or pace. This is particularly true considering that the evidence showed that Plaintiff could drive for two hours at a time, demonstrating an ability to maintain sustained concentration on a single task for an extended period of time. The Court finds that the ALJ's decision to reject Dr. Schwartz's opinion is supported by substantial evidence.

Plaintiff also challenges the ALJ's reliance on Plaintiff's fishing hobby as demonstrating an ability to maintain concentration, persistence, or pace. Plaintiff contended that he used to fish more often "but lately it's pretty much not much." However, the ALJ cited Plaintiff's own function report, where he wrote that he fishes once a week, and a third party a third party

1  function report from Plaintiff's sister, where she stated that Plaintiff goes fishing "monthly 2-3
2  hours," as evidence that Plaintiff goes fishing fairly frequently. (AR 196, 204.) The Court finds
3  that Plaintiff's ability to go fishing for 2-3 hours at a time serves as substantial evidence to reject
4  Dr. Schwartz's opinion regarding Plaintiff's ability to maintain concentration, persistence and
5  pace.

6  Plaintiff also argues that the ALJ relied on activities which predated Plaintiff's heart
7  attack, such as Plaintiff's graduation from high school, to reject Dr. Schwartz's opinion. While
8  the Court acknowledges that Plaintiff's high school graduation may not be particularly relevant
9  in determining the effect Plaintiff's 2010 heart attack had on Plaintiff's cognitive abilities, any
10 error by the ALJ was harmless. The ALJ cited substantial evidence to reject Dr. Schwartz's
11 opinion, which included the opinion of an examining doctor, Dr. Engeln, as well as Plaintiff's
12 reported daily activities. Accordingly, the ALJ did not err in his assessment of the medical
13 evidence.

14 Finally, Plaintiff repeatedly argues that the ALJ erred by failing to assess Plaintiff's
15 limitations in the categories of specific functional categories, namely concentration, persistence
16 and pace. Plaintiff appears to misunderstand the ALJ's written opinion. The ALJ <u>did</u> assess
17 Plaintiff's limitations in specific functional categories. The ALJ expressly acknowledged Dr.
18 Schwartz's opinions regarding Plaintiff's limitations in activities of daily living, maintaining
19 social functioning, and maintaining concentration, persistence or pace. (AR 23.) The ALJ did
20 not <u>ignore</u> these functional limitations, the ALJ <u>rejected</u> Dr. Schwartz's opinion in favor of Dr.
21 Engeln's opinion, who opined that Plaintiff did not have any restrictions or limitations in any
22 functional categories. (AR 332-333.)

23 Based upon the foregoing, the Court finds that the ALJ did not err in the assessment of
24 Plaintiff's mental limitations in the residual functional capacity.

25 **C.   The ALJ Erred in Assessing Plaintiff's Physical Limitations**

26 Plaintiff argues that the ALJ erred by failing to include several nonexertional physical
27 limitations in Plaintiff's residual functional capacity. Plaintiff argues that the ALJ erred in
28 failing to include a limitation in the residual functional capacity that Plaintiff be able to

periodically alternate between sitting and standing or walking at will. Plaintiff also argues that the ALJ failed to include a limitation regarding no moderate exposure to cigarette smoke.

### 1. Legal Standards for Evaluating Medical Opinions (Treating Physicians)

In addition to the legal standards set forth above, the following legal standards are relevant to the assessment of medical opinions from treating physicians. "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Lester, 81 F.3d at 830 (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

### 2. Medical Opinions Regarding Plaintiff's Physical Limitations

On April 28, 2011, Dr. S. Clancey, M.D. authored a Physical Residual Functional Capacity Assessment. (AR 276-280.) Dr. Clancey was a non-treating, non-examining physician. Dr. Clancey opined that Plaintiff could occasionally lift/carry up to 20 pounds and could frequently lift/carry up to 10 pounds. (AR 277.) Dr. Clancey opined that Plaintiff could stand or walk at least 2 hours in an 8-hour work day and sit about 6 hours in an 8-hour work day. (AR 277.) Dr. Clancey further opined that Plaintiff could only occasionally climb ramps/stairs and ladders/ropes/scaffolds and only occasionally stoop, kneel, crouch and crawl. (AR 278.) Dr. Clancey indicated that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights. (AR 279.)

On September 27, 2011, Dr. A. Lizarraras, M.D. authored a Physical Residual Functional Capacity Assessment. (AR 338-342.) Dr. Lizarraras was a non-treating, non-examining physician. Dr. Lizarraras' assessment was identical to Dr. Clancey's assessment.

Dr. Tejwant S. Dhillon authored an undated "Medical Opinion Re: Ability to do Work-Related Activities (Physical)." (AR 400-401.) Dr. Dhillon was a treating physician. Dr. Dhillon indicated that Plaintiff had no lifting or carrying limitations. (AR 400.) Dr. Dhillon indicated that Plaintiff could stand/walk about 4 hours during an 8-hour day and sit about 4 hours in an 8-

hour day. (AR 400.) Dr. Dhillon indicated that Plaintiff does not need the opportunity to shift "at will" from sitting and standing. (AR 401.) Dr. Dhillon found no limitations in Plaintiff's ability to twist, stoop, crouch, climb stairs, or climb ladders. (AR 401.)

On October 3, 2012, Dr. Dhillon authored a "Cardiac Medical Source Statement." (AR 402-407.) In response to the question "Does your patient need a job that permits shifting positions at will from sitting, standing or walking?" Dr. Dhillon checked the boxes for both "Yes" and "No." (AR 403.) Dr. Dhillon again found no limitations in Plaintiff's ability to twist, stoop, crouch/squat, climb stairs, and climb ladders. (AR 404.) Dr. Dhillon indicated that Plaintiff could "avoid even moderate exposure" to cigarette smoke. (AR 404.)

The administrative record also includes a loose page, which appears to be part of the undated report from Dr. Dhillon. (See AR 407.) On this page, Dr. Dhillon indicated that Plaintiff has no restrictions in reaching, handling, fingering, feeling or pushing/pulling. (AR 407.) Dr. Dhillon also indicated that Plaintiff did not suffer from any environmental restrictions, which contrasts with the October 3, 2012 report where Dr. Dhillon wrote that Plaintiff should avoid moderate exposure to cigarette smoke. (AR 407.)

### 3. The ALJ's Assessment of Plaintiff's Physical Limitations

The ALJ largely adopted the opinions of Dr. Dhillon. (AR 24.) The ALJ treated some of Dr. Dhillon's opinions as "errors." Specifically, the ALJ noted that Dr. Dhillon indicated that Plaintiff's condition would not last longer than 12 months, which the ALJ treated as a typographical error by Dr. Dhillon because, by that time, Plaintiff's condition had already lasted longer than 12 months. The ALJ also noted that in one report, Dr. Dhillon opined that Plaintiff had no limitations in how much he could lift and carry, which the ALJ attributed as another typographical error or oversight. With the exception of these errors, the ALJ adopted Dr. Dhillon's opinion. However, the ALJ did not discuss the discrepancy between the two reports from Dr. Dhillon regarding whether Plaintiff needed accommodation to shift between sitting and standing/walking "at will" in the workplace. The ALJ also did not discuss the discrepancy in terms of environmental restrictions and exposure to cigarette smoke. The residual functional capacity did not include either limitation.

The ALJ rejected the opinions of the consultative physicians because they did not examine the Plaintiff and the ALJ found their opinions to be less consistent with the record.

4. Discussion

Plaintiff argues that the ALJ's residual functional capacity assessment should have included several nonexertional physical limitations, including the ability to shift between standing and walking "at will," avoiding moderate exposure to cigarette smoke, and only occasionally climbing, stooping, kneeling, crouching and crawling, and avoiding hazards such as machinery and heights.

As a treating physician, Dr. Dhillon's medical opinion is entitled to far more deference than the opinions of Dr. Lizarraras and Dr. Clancey, who were non-treating, non-examining physicians. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Accordingly, the Court finds that the ALJ did not err in adopting Dr. Dhillon's opinions in areas where they contradicted the opinions of Dr. Lizarraras and Dr. Clancey. Specifically, Dr. Dhillon opined to no restrictions in climbing, stooping, and crouching, contradicting Dr. Lizarraras and Dr. Clancey in those areas. The ALJ did not err in finding that Plaintiff was not limited in those areas.

However, the Court notes that Dr. Dhillon's form questionnaire did not include questions asking about any limitations in kneeling or crawling nor did it include a question inquiring about limitations related to exposure to machinery and heights. Accordingly, the ALJ erred by failing to cite valid reasons to reject Dr. Lizarraras and Dr. Clancey's opinions regarding Plaintiff's limitations in those areas.

It is worth noting that these questions are typically found in standardized questionnaires in the Social Security context and the form questionnaire used by Dr. Dhillon appears to be one that was provided by Plaintiff's attorney at the administrative level.[2] Accordingly, it is not unreasonable that the ALJ overlooked the fact that Dr. Dhillon's form questionnaire did not specifically ask about limitations in kneeling, crawling, and exposure to machinery, since the ALJ likely glanced at sections dealing with postural limitations and environmental limitations

---

[2] Plaintiff is represented by different counsel in this appeal.

1  and made note of the categories where limitations were found and did not consider whether
2  categories would be missing altogether. If Plaintiff's counsel at the administrative level supplied
3  the forms used by Dr. Dhillon, Plaintiff's counsel should have pointed out the fact that the forms
4  he supplied were incomplete and did not cover all the standard categories typically considered by
5  the Social Security Administration. If this issue were identified at the administrative level, the
6  parties could have avoided a costly and needless appeal.

7  Moreover, the Court further finds that the ALJ erred by failing to resolve the internal
8  inconsistency in Dr. Dhillon's reports regarding exposure to cigarette smoke and whether
9  Plaintiff must be able to sit and stand "at will." Dr. Dhillon's two reports offered differing
10 opinions as to these categories of limitations. The ALJ should have provided some analysis as to
11 why he chose one report over the other, particularly in this situation where one of the reports was
12 undated and it was unclear which report was more recent. Again, to the extent that these reports
13 were submitted by Plaintiff's counsel at the administrative level, the Court admonishes
14 Plaintiff's counsel for failing to raise the issue of the inconsistencies at the administrative level.[3]

15 Defendant argues that any error by the ALJ in assessing limitations regarding the ability
16 to kneel and crawl, the exposure to hazards, and exposure to cigarette smoke is harmless. The
17 Court acknowledges that the first hypothetical presented to the VE at the hearing before the ALJ
18 appears to encompass a sit/stand "at will" option. (AR 54-55.) However, the remaining
19 limitations are not presented to the VE in a complete hypothetical.

20 Defendant argues that the Dictionary of Occupational Titles ("DOT") does not indicate
21 that any of the jobs identified by the VE (packing line worker, garment sorter, and ampule filler)
22 involve kneeling, crawling, exposure to hazards, or exposure to cigarette smoke. However, the
23 absence of any mention of kneeling, crawling, exposure to hazards or exposure to cigarette

---

[3] On the topic of possible neglect by Plaintiff's counsel at the administrative level, it is also worth noting that this is the first time the Court has ever seen an administrative record which includes opinions from a treating physician that are substantially less restrictive than the opinions offered by the agency consulting physicians. The report from the treating physician post-dates the reports from the agency physicians as well. If Dr. Dhillon's report was obtained and submitted by Plaintiff's counsel at the administrative level, it would appear to be a galling oversight by Plaintiff's counsel to obtain and submit reports which are actually prejudicial to Plaintiff's case. The Court notes these issue for future consideration on a motion for attorney's fees, as it appears that Plaintiff's counsel played a significant role in causing the errors which occurred at the administrative level.

18

1 smoke in the DOT job description does not, to the Court's knowledge, conclusively establish that those abilities are not required for those jobs. Accordingly, it appears that this action must be remanded for further administrative proceedings.

### D. Remand for Further Administrative Proceedings

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman, 211 F.3d at 1178). "The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1174, 1178 (9th Cir. 2000)).

Remand for further administrative proceedings is necessary to resolve the internal discrepancy in Dr. Dhillon's reports regarding whether Plaintiff requires accommodation that allows him to sit/stand "at will" and whether Plaintiff must avoid moderate exposure to cigarette smoke. Further administrative proceedings are also necessary to determine whether there exist a substantial number of jobs which Plaintiff can perform.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ erred by failing to cite valid reasons to reject Dr. Lizarraras and Dr. Clancey's opinions regarding Plaintiff's ability to kneel and to crawl, and whether Plaintiff must avoid concentrated exposure to hazards. Further, the Court finds that the ALJ erred by failing to resolve the internal inconsistency in Dr. Dhillon's

reports regarding whether Plaintiff requires accommodation that allows him to alternate between sitting and standing at will and whether Plaintiff must avoid even moderate exposure to cigarette smoke.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's appeal from the administrative decision of the Commissioner is PARTIALLY GRANTED;
2. This action is REMANDED to the Commissioner for further administrative proceedings;
3. JUDGMENT is entered in favor of Plaintiff Cesar Dominic Cardenas and against Defendant Commissioner of Social Security; and
4. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **April 27, 2015**

UNITED STATES MAGISTRATE JUDGE